UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| David Levoyd Reed,<br><br>    Plaintiff<br><br>v.<br><br>Brian E. Williams, et al.,<br><br>    Defendants | Case No.: 2:19-cv-01514-JAD-DJA<br><br>**Order Screening<br>First Amended Complaint,<br>Denying Motions, and Staying Action Until<br>Conclusion of State-Court Criminal Case**<br><br>[ECF Nos. 5, 6, 8, 12, 13] |

Pro se plaintiff and Nevada Department of Corrections inmate David Levoyd Reed brings this civil-rights action under 42 U.S.C. § 1983, claiming that his First, Fifth, Sixth, and Fourteenth Amendment rights were violated when staff and administrators at the Clark County Detention Center and the High Desert State Prison failed to transport him for court hearings, denied him an emergency grievance, placed him on suicide watch in retaliation for his grievance, and racially discriminated against him.[1]  I accept the First Amended Complaint (FAC) as the operative complaint in this case, and because Reed applies to proceed *in forma pauperis*,[2] I screen that complaint under 28 U.S.C. § 1915A.  Having done so, I find that Reed has pled colorable First and Fourteenth Amendment claims, but that this case must be stayed under the *Younger* abstention doctrine because by adjudicating some of Reed's claims, this court would be interfering with Reed's ongoing state criminal proceedings.  So I dismiss some claims, stay the rest until Reed's state-court proceedings conclude, and resolve his pending motions.

---

[1] ECF No. 10.
[2] ECF No. 1.

**Background**

**A.     Reed's factual allegations**[3]

In September 2017, Reed was arrested following a high-speed chase.[4] He determined that the police officers had lied about their basis for initiating a traffic stop and asked his court-appointed attorney to subpoena video evidence and witnesses to prove it at his preliminary hearing. Though Nevada law gives accused persons the right to a preliminary hearing within fifteen days, along with a right to dispute any evidence,[5] on November 1, 2017, Sheriff Joe Lombardo failed to transport Reed to his court-ordered preliminary hearing. Had the preliminary hearing taken place as scheduled, Reed could have presented evidence that would have demonstrated that there was no triable evidence to support a jury trial.

The preliminary hearing was rescheduled to November 17, 2017,[6] but three days before that, Reed was transported to Nevada's High Desert State Prison (HDSP). Although he asked HDSP officials about his pending court date, they refused to transport him to court, causing Reed to miss another hearing.[7] HDSP warden Brian Williams and Sheriff Lombardo thus violated the court order to transport Reed to court.

Early on the morning of November 17, 2017, Reed asked Peterson for an emergency grievance to file about the failure to transport him for his hearing, but Peterson refused to give him one. Had Peterson given Reed the emergency grievance, there still would have been time to

---

[3] These facts are merely a summary of Reed's allegations and are not intended as findings of fact. The legal assertions in this section are Reed's allegations, too.
[4] ECF No. 10 at 5.
[5] *Id.* at 6.
[6] *Id.* at 7.
[7] *Id.* at 9.

transport Reed to his hearing, but Peterson's refusal caused Reed to miss yet another hearing, Reed alleges that missing this hearing prejudiced his defense and has contributed to his continued detention.[8]

Over the past three years, Reed has missed a total of 26 separate hearings based on the defendants' refusal to transport him.[9]  For example, on November 27, 2017, Williams did not transport Reed to his scheduled arraignment, which impaired his defense.  On April 8, 2019, Warden Calvin Johnson and/or Warden Williams did not transport Reed to a scheduled motion hearing to inspect all favorable evidence, even though Reed was proceeding pro se, further impairing his defense.  And on June 18, 2020, Calvin Johnson failed to bring Reed to his habeas corpus hearing.

On November 28, 2017, Reed attended court and "demanded to proceed with the final revocation in accordance with the Fourteenth Amendment."[10]  Although Nevada statutes require the parole board to conduct a final revocation within 60 days of an inmate's return to NDOC custody, the parole board improperly revoked Reed's parole on October 29, 2019, two years after he was arrested on the new charges.

Separately, Reed alleges that on November 29, 2017, he was brought to court.[11]  During the hearing, Reed complained about the conditions of his confinement, and the court ordered Reed to file a reply by December 27, 2017.  Reed requested an emergency grievance to log the fact that the court had ordered him to file a reply, but Martinez-Hernandez refused to give Reed an emergency grievance.  Instead, Martinez-Hernandez brought Reed a phone, which Reed then

---

[8] *Id.* at 8.
[9] *Id.* at 9.
[10] *Id.* at 10.
[11] *Id.* at 11.

refused to return unless he was brought a grievance form. Martinez-Hernandez returned with several other officers and threatened to beat up Reed if he did not return the phone. Martinez-Hernandez then let two inmates out of their cells so they, too, could threaten Reed.[12] A little while later, Martinez-Hernandez returned with the grievance form.

The next day, Reed received a notice of charges. Martinez-Hernandez then returned the emergency grievance and told Reed to pack up his property. Reed was brought to the infirmary, where he was ordered to strip and was placed on suicide watch. After a few hours, the nurse told Reed that there was no reason for him to be there and allowed him to return to his cell.

Reed also alleges that on February 2, 2018, he and another inmate both received a notice of charges for covering their lights.[13] They had both been warned about covering their lights, and both pleaded guilty to the charge. Brown held a hearing and found Reed—who is black—guilty. But Brown found the other inmate—who is white—not guilty. Both inmates were charged by the same officer, with the same offense, at the same time. Nonetheless, Brown treated Reed more harshly than the white inmate. Reed alleges that the basis for this disparate treatment was racial discrimination.

**B.     Reed's causes of action**

Based on these events, Reed sues Joe Lombardo, Peterson, Guy Brown, Brian E. Williams, Sr., J. Martinez-Hernandez, senior officer Peterson, and Calvin Johnson. In Count I, Reed alleges First, Fifth, Sixth, and Fourteenth Amendment claims. Reed does not explain the basis of these various claims. Based on the allegations in the FAC, I liberally construe Count I as a Fourteenth Amendment claim based on the failure to transport Reed to court hearings and

---

[12] *Id.* at 11.
[13] *Id.* at 13.

the revocation of his parole. I dismiss any other claims without prejudice because they do not state plausible claims.

In Count II, Reed brings First, Eighth, and Fourteenth Amendment claims. Reed's First Amendment claim is based on his right to file grievances and to be free from retaliation. I construe this as a First Amendment retaliation claim. Reed states that his Eighth and Fourteenth Amendment claims are based on negligence. Negligent acts do not give rise to a constitutional claim, so I dismiss Reed's Fourteenth and Eighth Amendment negligence claims with prejudice, as amendment would be futile.

In Count III, Reed brings a Fourteenth Amendment equal-protection claim based on the allegations of disparate treatment during a disciplinary hearing.[14] Reed seeks damages and declaratory relief.[15]

## Discussion

**A.    Screening standard**

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or an officer or employee of a governmental entity.[16] In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief.[17] All or part of the complaint may be dismissed *sua sponte* if the prisoner's claims lack an arguable basis in law or fact. This includes claims based on legal conclusions that are untenable, like claims against defendants who are

---

[14] *Id.* at 5, 11, 13.
[15] *Id.* at 16.
[16] *See* 28 U.S.C. § 1915A(a).
[17] *See* 28 U.S.C. § 1915A(b)(1)(2).

5

immune from suit or claims of infringement of a legal interest which clearly does not exist, as well as claims based on fanciful factual allegations or fantastic or delusional scenarios.[18]

Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief.[19] In making this determination, the court takes all allegations of material fact as true and construes them in the light most favorable to the plaintiff.[20] Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers,[21] but a plaintiff must provide more than mere labels and conclusions.[22] "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations."[23] "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[24]

**B.     Analysis of Reed's claims**

***1.     Reed states a colorable First Amendment retaliation claim.***

Prisoners have a First Amendment right to file prison grievances and to pursue civil-rights litigation in the courts.[25] "Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices. And because purely retaliatory

---

[18] *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

[19] *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).

[20] *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996).

[21] *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *see also Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (recognizing that pro se pleadings must be liberally construed).

[22] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[23] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

[24] *Id*.

[25] *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004).

actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield."[26]  To state a viable First Amendment retaliation claim in the prison context, a plaintiff must allege: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."[27]  Total chilling is not required; it is enough if an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities.[28]  Under these standards, Reed states a valid First Amended retaliation claim for some—but not all—of his allegations.

Reed states a colorable claim regarding his suicide-watch placement.  Liberally construed, the FAC alleges that on November 29, 2017, Reed filed an emergency grievance and Martinez-Hernandez had him placed on suicide watch the next day in retaliation for that filing. Reed further alleges that there was no valid basis to place him on suicide watch, and it resulted in him being stripped naked and placed in a cell for several hours.  These allegations are sufficient to state a colorable First Amendment retaliation claim at this early stage of the proceedings.

But Reed's allegations that he was subjected to threats from Martinez-Hernandez and others when he refused to return the phone do not state a colorable claim.  Refusing to return a prison phone does not constitute protected conduct.  So Martinez-Hernandez's alleged retaliatory

---

[26] *Id*.
[27] *Id*. at 567–68.
[28] *Id*. at 568–69.

actions in response to Reed's refusal to return the phone cannot be said to have impacted protected conduct. I thus dismiss any such claim with prejudice, as amendment would be futile.

### 2. Reed states a colorable equal-protection claim.

The Equal Protection Clause of the Fourteenth Amendment is essentially a direction that all similarly situated persons be treated equally under the law.[29] In order to state an equal-protection claim, a plaintiff must allege facts demonstrating that defendants acted with the intent and purpose to discriminate against him based upon membership in a protected class, or that defendants purposefully treated him differently than similarly situated individuals without any rational basis for the disparate treatment.[30]

I find that Reed states a colorable equal-protection claim. Liberally construed, his allegations are that on February 2, 2018, he and another inmate both received a notice of charges for covering their lights. Reed is black and the other inmate is white, and although they were charged with identical offenses by the same officer at the same time, and both pled guilty, Brown found Reed guilty and found the white inmate not guilty. There was no difference between Reed and the other inmate other than their skin color. These allegations give rise to the inference that Brown acted with the intent and purpose to discriminate against Reed based on his race, and they are sufficient to state a colorable equal-protection claim for screening purposes.

### 3. Reed's claims regarding his parole revocation are barred by law.

To the extent that Reed's claims are based on his parole revocation, they are barred by law. In *Heck v. Humphrey*, the United States Supreme Court held that a claim seeking a judgment that would necessarily imply that his conviction or sentence is invalid "is not

---

[29] *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

[30] *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001); *see also Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

cognizable under § 1983" and must be dismissed.[31]  In short, *Heck* preserves the rule that a successful claim that would necessarily imply the invalidity of a conviction or sentence must be brought by filing a petition for writ of habeas corpus—not as a § 1983 claim—after exhausting appropriate avenues for relief.[32]  The Ninth Circuit Court of Appeals has recognized that *Heck* applies to § 1983 claims that would invalidate a parole revocation.[33]  Reed's claims that his parole was improperly revoked are barred by *Heck* because he does not allege that his parole revocation has been invalidated.  So I dismiss this claim without prejudice.

### 4. *Reed states a colorable claim that he has been denied the right to be present at court hearings.*

A criminal defendant has a Fourteenth Amendment right "to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure."[34]  Reed alleges that defendants Lombardo, Williams, Johnson, and Peterson all participated in refusing to bring him to various court hearings.  Reed alleges that he missed 26 court hearings, and only two of those were missed to issues related to COVID-19.  Reed further alleges that the failure to bring him to these hearings critically impacted his ability to defend himself at trial.  I find that these allegations are sufficient to state a colorable Fourteenth Amendment claim at this screening stage.

---

[31] *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994).
[32] *Muhammad v. Close*, 540 U.S. 749, 750–751 (2004).
[33] *Jenkins v. Craven-West*, 145 F.3d 1338 (9th Cir. 1998) (unpublished).
[34] *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987).

### 5. *Younger* abstention applies to Reed's claim that he has been denied the right to be present at court hearings.

When the court determines that a pro se prisoner's claim is sufficiently pled to survive screening, the case typically proceeds to the next phase. But that's not true when that claim requires the federal court to decide issues impacting an ongoing criminal prosecution. In *Younger v. Harris*, the Supreme Court held that the principles of comity and federalism generally preclude federal courts from interfering with ongoing state criminal proceedings when those proceedings implicate important state interests and provide an adequate opportunity to raise federal questions.[35] To avoid that interference, the *Younger* abstention doctrine generally requires the federal court to dismiss a plaintiff's claims for injunctive or declaratory relief.[36] If its damages related to the conduct in that ongoing state criminal proceeding that the plaintiff seeks, the federal case should be stayed until the state case concludes.[37]

I find that *Younger* abstention is appropriate in this case. Based on the allegations in the complaint, it appears that there is an ongoing criminal proceeding, and Reed's allegations that he is being denied a fair trial in state court implicate the state's interest in enforcing its criminal code. Reed has the opportunity to argue in state court that his rights are being violated, and any ruling by this court that Reed is being denied a fair trial would necessarily intrude on the ongoing state criminal proceedings. Reed also does not allege that any extraordinary circumstances exist that would warrant federal intrusion in the ongoing state criminal trial. Because Reed seeks a declaration that all the defendants violated his rights by failing to transport him to court hearings,

---

[35] *Younger v. Harris*, 401 U.S. 37, 45–46 (1971); *Brown v. Ahern*, 676 F.3d 899, 900–01 (9th Cir. 2012).

[36] *Gilbertson v. Albright*, 381 F.3d 965, 981 (9th Cir. 2004).

[37] *Id.*

as well as damages from Williams, Lombardo, and Johnson for that conduct,[38] I dismiss his claim for declaratory relief, and I stay his claim for monetary relief and his remaining colorable claims under the *Younger* abstention doctrine. Once Reed's state criminal case has concluded, he must file a motion to lift this stay so that this case can move forward.

**C.     Reed's Motions**

> ***1.     I deny Reed's motion for joinder [ECF No. 5].***

Reed moves to join three civil-rights actions and add multiple defendants under 18(a).[39] Although he labels his motion as one for "joinder," Reed truly seeks to consolidate his cases. Rule 18(a) governs the joinder of claims in one action and provides that "[a] party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party."[40] However, when a party seeks to join two actions together, the party is seeking *to consolidate* the actions, and that process is controlled by Federal Rule of Civil Procedure 42(a), which allows a court to consolidate actions that "involve a common question of law or fact."[41]

Reed's motion to consolidate[42] does not demonstrate that the cases he seeks to combine involve a common question of law or fact. Rather, it appears that Reed wishes to join three different cases involving different claims and defendants, and to proceed on all his claims in a single action. Unfortunately, that result is not available to him here. So I deny his motion.

---

[38] ECF No. 10 at 16.
[39] ECF No. 5 at 1–2.
[40] Fed. R. Civ. P. 18(a).
[41] Fed. R. Civ. P. 42(a)(2).
[42] ECF No. 5.

### 2.     *I deny Reed's motion for appointment of counsel [ECF No. 6].*

Like many prisoners who file civil-rights claims, Reed asks the court to find and appoint a free lawyer to represent him in this case.[43] A litigant does not have a constitutional right to appointed counsel in 42 U.S.C. § 1983 civil-rights claims.[44] The statute that governs this type of litigation, 28 U.S.C. § 1915(e)(1), provides that "[t]he court may request an attorney to represent any person unable to afford counsel." However, the court will appoint counsel for indigent civil litigants only in "exceptional circumstances."[45] "When determining whether 'exceptional circumstances' exist, a court must consider 'the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims pro se in light of the complexity of the legal issues involved."[46] "Neither of these considerations is dispositive and instead [they] must be viewed together."[47] Because I do not find exceptional circumstances here, I deny the motion to appoint counsel.

### 3.     *Reed's objection to the magistrate judge's order denying his requests to supplement his original complaint is moot [ECF No. 8].*

Reed has filed two motions to file a supplemental complaint, together with supplemental complaints.[48] The magistrate judge denied those motions and ordered Reed to file a single, complete complaint, reasoning that the court will not piecemeal together a complaint from

---

[43] ECF No. 6.
[44] *Storseth v. Spellman*, 654 F.2d 1349, 1353 (9th Cir. 1981).
[45] *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009) (§ 1983 action).
[46] *Id.*
[47] *Id.*
[48] ECF Nos. 1-1, 3, 3-1, 4, 4-1.

12

multiple filings.[49] Reed filed an objection to that order in which he argues that he should not be required to file a single amended complaint because it would only further delay this action.[50] Since filing that objection, Reed filed his first amended complaint, superseding all of his previous pleadings and rendering his objection moot. So I overrule the objection as moot.

### 4. *Reed's motion for a preliminary injunction is moot [ECF No. 12].*

Reed filed a motion for a preliminary injunction, requesting that he be transferred to the CCDC.[51] Since filing that motion, Reed filed an updated address, which indicates that he has been transferred to CCDC. So I deny this motion for a preliminary injunction as moot.

### 5. *I deny Reed's emergency motion [ECF No. 13].*

Finally, Reed filed a motion entitled "emergency motion," in which he appears to allege that Nevada's Eighth Judicial District, the Clark County Public Defender's office, the Clark County District Attorney's Office, and HDSP, among others, are conspiring to prevent him from filing motions prior to his upcoming state-court criminal trial.[52] Reed does not appear to request any relief in this motion. Moreover, the allegations are not related to the topics in his complaint and thus do not appear to be properly brought in this case. So I deny the motion. This court cannot and will not grant relief in a case when the relief sought is unrelated to the subject of the lawsuit.

---

[49] ECF No. 7.
[50] ECF No. 8. at 3.
[51] ECF No. 12.
[52] ECF No. 13 at 2.

13

**Conclusion**

IT IS THEREFORE ORDERED that:

- Plaintiff's motion for joinder **[ECF No. 5] is DENIED**.
- Plaintiff's motion for appointment of counsel **[ECF No. 6] is DENIED**.
- Plaintiff's objection to the magistrate judge's order **[ECF No. 8] is OVERRULED.**
- Plaintiff's motion for a preliminary injunction **[ECF No. 12] is DENIED** as moot.
- And plaintiff's emergency motion **[ECF No. 13] is DENIED.**

IT IS FURTHER ORDERED that the First Amended Complaint (ECF No. 10) is the operative complaint in this case.

IT IS FURTHER ORDERED that:

- The following claims are DISMISSED:
    - Plaintiff's claim regarding improper revocation of his parole (as *Heck*-barred);
    - Plaintiff's claims for declaratory relief regarding the failure to transport him to court hearings (under *Younger*); and
    - Plaintiff's First Amendment retaliation claim based on threats made in retaliation for his refusal to return a prison phone (dismissed with prejudice and without leave to amend, as amendment would be futile).
- This case proceeds only on (1) plaintiff's Fourteenth Amendment damages claim that he has been denied the right to be present at court hearings during his criminal trial; (2) plaintiff's First Amendment retaliation claim based on his placement in suicide watch; and (3) plaintiff's equal-protection claim;

- To the extent that plaintiff is attempting to bring any other claim, it is dismissed without prejudice.

However, IT IS FURTHER ORDERED that **THIS CASE IS STAYED for all purposes until plaintiff's state criminal case is completed.  Plaintiff must file a request to reopen this case and lift the stay within 30 days of the final disposition of his criminal case if he wishes to proceed.  If he fails to do so, this case may be dismissed without further notice.**

**The Clerk of Court is directed to ADMINISTRATIVELY CLOSE this case.**

Dated: September 17, 2021

_____
U.S. District Judge Jennifer A. Dorsey